UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MOLLY McBRIDE-CRAWFORD,

                Plaintiff,

v.                                            **DECISION AND ORDER**
                                                                  12-CV-1180S

GENERAL MILLS CEREALS OPERATIONS,
INC.,

                Defendant.


## I. INTRODUCTION

Plaintiff commenced this action on November 29, 2012, asserting claims of discrimination on the basis of sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.[1] Presently before this Court is Defendant's motion for summary judgment dismissing the Complaint. This Court finds the matter fully briefed and oral argument unnecessary. For the reasons that follow, Defendant's motion is granted.

## II. BACKGROUND

Defendant hired Plaintiff in August 2006 as a casual employee in its Elevator Department. (Clemens Decl Ex A ¶¶ 1-2, Docket No. 22-3.) As a casual employee, Plaintiff would be called to work on a particular day or for a short period when additional labor was needed. (Id.) On March 26, 2009, Plaintiff began an extended period of work as a replacement for a regular employee who was on a leave of absence. (Id. ¶¶ 7-8.)

---

[1] Plaintiff commenced this action *pro se* but obtained counsel shortly after filing her complaint.

During the course of Plaintiff's employment, morning meetings were held in an Elevator Department break room which, when Plaintiff was initially hired in 2006, was open to the men's locker room. (Clemens Decl Ex D at 125, 215 (Transcript of New York State Department of Human Rights ("NYSDHR") Hearing).)  A wall between the break room and the men's locker room was erected prior to Plaintiff reporting for work in March 2009. (Clemens Decl Ex A ¶ 17.)  Plaintiff asserts that the door in this new wall was "never shut," therefore the situation did not in fact change. (Clemens Decl Ex D at 127, 215.)

Plaintiff worked primarily in a shanty, or small room with a telephone in it, in the basement. (Clemens Decl Ex D at 69-73.)  Plaintiff asserts that she frequently received harassing phone calls in her shanty from unidentified persons saying, for example, "we don't need a girl here," or making pig sounds or sexual noises. (Id. at 73-81.) She further asserts that pornographic materials were left in the shanties approximately once a week, as well as pornographic drawings and sexually suggestive comments left on the shanty walls. (Id. at 82-90.)  On occasion, Plaintiff would find that the air had been let out of her car's tires, or that a dead rat had been left in her shanty. (Id. at 139, 142-43.) Further, she once overheard an unidentified person say "we don't want pussy here." (Id. at 92-94.)

Plaintiff was informed on August 13, 2009, that she was being terminated due to tardiness and absenteeism. (Id. ¶ 12.)  On August 26, 2009, Plaintiff filed a NYSDHR complaint alleging disparate treatment and termination on the basis of sex and subjection to a hostile work environment. (Clemens Decl Ex B.) The charge was subsequently amended to also include a retaliation claim. (Id. Ex C.)  Following a four

day hearing, transcripts from which form the principle evidence on the present motion, the NYSDHR Commissioner adopted the recommendation of an Administrative Law Judge to dismiss Plaintiff's claims as unsupported.

Although represented by counsel during the NYSDHR proceedings, Plaintiff commenced the present Title VII action *pro se* in November 2012 by completing and filing a preprinted discrimination complaint form, on which she checked the following categories of alleged discriminatory action by Defendant: failure to employ her; termination of her employment; harassment on the basis of sex; harassment on the basis of unequal terms and conditions of employment; retaliation because she complained of discrimination or harassment toward her and toward others.[2] When prompted to describe the facts of her case, Plaintiff wrote:

> Plaintiff was required to report to a men[']s locker room/shower breakroom to clock in for work and to receive assignments for the day. This was from her first day of work in 2005 to [the] end of her employment. The place of employment was the elevator department in the cereal plant. Plaintiff['s] employment was from 2005 to Aug 13th, 2009.
>
> On many occasions Plaintiff was at work before her shift but could punch in [at] 7:00AM and men were showering and walking around in various stages of undress. She was later sighted [*sic*] for being late d[e]spite telling management of this condition.

(Compl ¶ 19.) Plaintiff also indicated that her claims were being raised under both Title VII and New York State Human Rights Law ("NYSHRL").

In its motion for summary judgment, Defendant has interpreted Plaintiff's complaint as alleging: (1) discrimination on the basis of sex based on the requirement that she clock in in the men's locker room and based on her termination; (2) a hostile work environment claim based on the allegation that Plaintiff was continuously

---

[2] Plaintiff also checked boxes related to a failure to accommodate, but the parties do not dispute that there is no disability discrimination claim here.

subjected to men coming into the break room in various stages of undress; and (3) her termination was retaliation for prior complaints of discrimination. (See Def's Mem of Law at 17-26.)

### III. DISCUSSION

"A motion for summary judgment may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant the entry of judgment for the moving party as a matter of law." Kaytor v. Elec. Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010). A court's function on a summary judgment motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." Kaytor, 609 F.3d at 545 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 248), *cert denied*, 540 U.S. 811 (2003). A court must also "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).

**A.     Election of Remedies**

Defendant argues that Plaintiff's claims must be dismissed to the extent that she is pursuing them under New York State Human Rights Law ("NYSHRL"). (Def's Mem of Law at 26-27; see Docket No. 1 (Plaintiff checked NYSHRL as an additional claim

4

category).)   Plaintiff does not oppose this argument, noting only that the prior administrative decision does not preclude a *de novo* review of her Title VII claims. (Pl's Mem in Opp'n at 4.)

Defendant is correct that, because Plaintiff pursued her claims by way of a hearing on an administrative complaint before the New York State Department of Human Rights, she is barred from pursuing these same claims in federal court. See York v. Ass'n of Bar of City of N.Y., 286 F.3d 122, 126-27 (2d Cir. 2002), *cert denied* 537 U.S. 1089 (2002); see N.Y. Exec. Law §§ 297(9), 298. This Court therefore lacks jurisdiction over Plaintiff's claims to the extent any are asserted under NYSHRL, and such claims are dismissed. See McGullam v. Cedar Graphics, Inc., 609 F.3d 70, 74 n. 3 (2d Cir. 2010) (a state law which divests state courts of jurisdiction also divests federal courts of jurisdiction).

**B.   Hostile Work Environment**

Under Title VII, "a hostile work environment exists where the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Moll v. Telesector Res. Grp., Inc., 760 F.3d 198, 203 (2d Cir. 2014) (internal quotation marks omitted).  "To decide whether the threshold has been reached, courts examine the case-specific circumstances in their totality and evaluate the severity, frequency, and degree of the abuse." Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002).  Relevant factors also include:

> the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological well-being is, of course,

5

relevant to determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required.

Harris v. Forklift Sys., 510 U.S. 17, 23, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993). Further, it is "axiomatic" that the conduct creating the hostile work environment under Title VII occurred because of a plaintiff's sex. Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001).

In her opposition to Defendant's motion, Plaintiff argues that the existence of a hostile work environment is evidence by her testimony that she: was called "the girl" every day; received frequent phone calls in her work shanty stating "we don't need a girl here" or similar harassment; was referred to as a "work wife," was exposed to pornographic magazine pictures and drawings that were left in her shanty; found that the air had been let out of her tires or a dead rat in her shanty; and was subjected to the "partial and full nudity of her male coworkers" because she was required to attend meetings in a break room adjacent to the men's locker room. (Pl's Mem in Opp'n at 6-9.)

Defendant initially argues that, with the exception of the assertions regarding the break room, these allegations are outside the scope of Plaintiff's complaint and should not be considered. Defendant correctly highlights the fact that, because Plaintiff included the telephone allegations in her original NYSDHR complaint and testified as to the additional allegations at the DHR hearing, her omission of them from her subsequent federal complaint appears intentional. Further, a complaint cannot be constructively amended by raising new facts and theories in opposition to a summary judgment motion, therefore such new allegations and claims should generally not be

6

considered. See Scott v. City of New York Dept. of Correction, 641 F. Supp. 2d 211, 229 (S.D.N.Y. 2009), *aff'd* 445 F. App'x 389 (2d Cir. 2011); Tomlins v. Vill. of Wappinger Falls Zoning Bd. of Appeals, 812 F. Supp. 2d 357, 363 n. 9 (S.D.N.Y. 2011). Such is the case even where, as here, Plaintiff commenced the action *pro se* prior to obtaining counsel and previously raised the additional allegations in other forums. Scott, 641 F. Supp. 2d at 229.

In contrast, however, the additional allegations at issue here are not a new claim of which Defendant had no prior notice. Indeed, the evidence on which Plaintiff now relies for these allegations consists of the NYSDHR hearing transcript submitted by Defendant in support of its motion. (See Clemons Decl Ex D.) Thus, this is not a case of unfair surprise or lack of discovery. (But see Clemens Decl Ex A ¶¶ 1-2 (Defendant's requests for Plaintiff's admissions were limited to the allegations in the *pro se* federal complaint).)

In any event, resolution of this issue is unnecessary because even if Plaintiff's "new" allegations are properly considered, the more extensive harassment described therein cannot be imputed to Defendant. See Duch v. Jakubek, 588 F.3d 757, 762 (2d Cir. 2009) (a plaintiff must also establish that there is a specific basis for imputing the conduct creating the hostile work environment to the employer); see also Summa v. Hofstra Univ., 708 F.3d 115, 124 (2d Cir. 2013). Here, to the extent any individuals are identified, Plaintiff alleges that the harassment was perpetrated by coworkers. "[W]hen the harassment is attributable to a coworker, rather than a supervisor, … the employer will be held liable only for its own negligence." Duch, 588 F.3d at 762 (citation omitted). An employer's negligence can be established by showing that it failed to provide a

reasonable avenue for a plaintiff's complaint or that "it knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action" Id. (quoting Howley v. Town of Stratford, 217 F.3d 141, 154 (2d Cir. 2000)); see also Petrosino v. Bell Atlantic, 385 F.3d 210, 225 (2d Cir. 2004) (citing Faragher v. City of Boca Raton, 524 U.S. 775, 789, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)).

Plaintiff's testimony before the NYSDHR establishes that she made almost no complaints regarding the harassment she now alleges. Plaintiff testified that she spoke with the human resources manager on two occasions regarding gender or sexual harassment, at which times she complained that a coworker referred to her as "the girl" and that she felt she was being treated "basically unfair." (Clemens Decl Ex D at 94-102, 104-07.) Plaintiff conceded that she did not detail on these occasions any of the more severe harassing conduct currently alleged. (Id. at 102-103.) Instead, Plaintiff "wasn't very vocal," but had hoped that the human resources manager would "more or less see it in [her] face." (Clemens Decl Ex D at 100.) Further, even with respect to the allegation contained in her complaint that she was subjected to repeated partial nudity of male coworkers, Plaintiff's testimony recalls only one conversation when she asked her supervisor, Ryan McKinney, to have the men shut the connecting door between the break room and the locker room, and one complaint to him about being referred to as a "work wife," both of which occurred near the beginning of her 2009 term, but she could not recall any other conversation with McKinney regarding gender discrimination or harassment. (Clemens Decl Ex D at 109-110, 128-130.) Accordingly, the misconduct of which Plaintiff complained is not sufficient to impute to Defendant knowledge of the

extensive harassment currently alleged.

Plaintiff further argues that knowledge of the prevalence of pornographic magazines and graffiti in the work shanties can be imputed to Defendant because Plaintiff's supervisor McKinney inspected the shanties, and therefore he "must have known." (Pl's Mem in Opp'n at 14). However, Plaintiff testified that McKinney was the only supervisor to come into the work shanties, and she was unsure if he ever saw pornography out on the tables. (Clemens Decl Ex D at 90-91, 130.) She further testified that, although McKinney referenced once in 2009 the need to paint over graffiti, she had crossed out some of the inappropriate pictures. She was therefore unsure if McKinney was aware of the inappropriate pornographic graffiti. (Clemens Decl Ex D at 130-31.) A coworker's testimony provides evidence of only a sporadic presence of pornography or inappropriate graffiti. The coworker testified that if a supervisor did see something offensive on a wall, employees would be directed to paint over it, and that he recalled this happening approximately "[m]aybe once every ten years, something like that." (Clemens Decl Ex E at 343-44, 369-71.) The coworker further testified that he did not see any anatomical graffiti in 2009, noting that "there's a lot of women around and stuff and so you haven't seen it up in a while." (Id.at 344-45.) Similarly, although the coworker had observed pornographic magazines in the shanties, (Id. at 340-41, 345-46), there was no evidence that any supervisors were aware of the magazines.

Accordingly, there is insufficient evidence from which a rational juror could conclude that Defendant had actual or constructive notice of the discriminatory conditions severe enough to alter the conditions of Plaintiff's employment and create an abusive working environment. see Moll, 760 F.3d at 203. Defendant is entitled to

summary judgment dismissing this cause of action.

**C.	Discrimination**

Plaintiff's claim of discrimination is analyzed under the familiar burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). See Reynolds v. Barrett, 685 F.3d 193, 202 (2d Cir. 2012); Weinstock, 224 F.3d at 42. "Under [this] framework, a plaintiff establishes a *prima facie* case of intentional discrimination by showing that '(1) [s]he is a member of a protected class; (2) [s]he was qualified for the position [s]he held; (3) [s]he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to [an] inference of discrimination.' " Reynolds, 685 F.3d at 202 (quoting Ruiz v. Cnty. of Rockland, 609 F.3d 486, 491-92 (2d Cir. 2010)).

> If the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the employer to come forward with a legitimate, nondiscriminatory reason for the adverse employment action. If the employer does so, the burden then returns to the plaintiff to demonstrate that [gender] was the real reason for the employer's adverse action. Importantly, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."

Reynolds, 685 F.3d at 202 (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

Although Defendant has interpreted Plaintiff's Complaint as alleging that the requirement that she clock in in the men's locker room is a separate adverse employment action, Plaintiff does not dispute Defendant's argument that this does not constitute a "materially adverse change in the terms and conditions of employment." Sanders . N.Y.C. Human Resources Admin., 361 F.3d 749, 755 (2d Cir. 2004) (internal quotation marks omitted); (see Def's Mem of Law at 17-19; Pl's Mem in Opp'n at 16-21.)

10

Thus, only Plaintiff's termination is at issue. On this point, Defendant argues that there is no proof that Plaintiff's August 2009 termination occurred under circumstances raising an inference of discrimination. Additionally, Defendant asserts that, even assuming Plaintiff did establish a *prima facie* case, there was a legitimate, non-discriminatory reason for the termination, specifically Plaintiff's many unexcused absences or instances of lateness.

In opposition, Plaintiff argues that there is sufficient evidence in the record to support her minimal prima facie burden. See generally Collins v. N.Y.C. Transit Auth., 305 F.3d 113, 118 (2d Cir. 2002) (describing a plaintiff's initial burden in an employment discrimination case as minimal). Specifically, Plaintiff argues that a discriminatory inference is raised by her working conditions in the months leading up to her termination. She further argues that a triable issue of material fact whether Defendant's reason for termination was mere pretext is raised by evidence that: (1) similarly situated male employees were not terminated solely for attendance issues; and (2) Plaintiff never received a copy of the attendance policy relied on by Defendant nor was she warned that her attendance issues could lead to termination. (Pl's Mem in Opp'n at 16-21.)

Here, the absence of evidence that those supervisors involved in her termination participated in the alleged discriminatory conduct, or even had knowledge of more than one or two isolated complaints, undermines Plaintiff's assertion that her work conditions raise a *prima facie* case of discrimination. See generally Tomassi v. Insignia Fin. Grp., 478 F.3d 111, 115 (2d Cir. 2007) (holding that remarks by someone other than decision maker "may have little tendency to show that the decision-maker was motived by the

discriminatory sentiment expressed in the remark"), *abrogated on other grounds by* Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177–78, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009). Even assuming Plaintiff met this minimal burden, however, Defendant has articulated a legitimate, non-discriminatory reason for her termination, specifically excessive absenteeism.

Defendant asserts that it is its practice to apply the provisions of its Attendance Control Program ("ACP") governing seasonal workers to casual employees such as Plaintiff. (Def's Stmt Facts ¶¶ 39-41, 43-44.) This policy provides for the termination of a seasonal employee who accumulates ten points under the ACP's point system, (Id. ¶ 43), and here Defendant submitted evidence that Plaintiff accrued approximately 19 points, thereby warranting dismissal. (Clemens Decl Ex E at 443-450, Exs H, J.) Plaintiff admits that, from March through August 2009, she was absent from work on seven days, late to her shift on four occasions, and left early on an additional five days. (see Clemens Decl Ex A ¶¶ 8-11.) She nonetheless argues that Defendant improperly assessed points for several of those dates because she either called in or otherwise acted pursuant to policy, highlighting that Defendant in fact corrected her attendance record following her termination. (Pl's Stmt Opp'g Facts ¶¶ 46-55, 57; see Sanders Decl Ex 3 (Plaintiff's corrected attendance report reflecting 19 rather than 27 points).)

This dispute regarding the proper calculation of Plaintiff's attendance record does not on its own equate with a triable issue of material fact regarding pretext that precludes summary judgment. "[T]he fact that an employee disagrees with the results of an employer's decision regarding termination, or even has evidence that the decision was objectively incorrect or was based on a faulty investigation, does not automatically

demonstrate, by itself, that the employer's proffered reasons are a pretext for termination." Rodriguez v. City of New York, 644 F. Supp. 2d 168, 187 (E.D.N.Y. 2008) (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 146-47, 120 S. Ct. 2097, 147 L.Ed.2d 105 (2000)); see Sharpe v. Utica Mut. Ins. Co., 756 F. Supp. 2d 230, 250 (N.D.N.Y. 2010).  Instead, a "plaintiff must produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action." Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000) (internal quotation marks and brackets omitted), *cert denied*, 540 U.S. 811 (2003).

Here, Plaintiff failed to meet this burden.  Plaintiff asserts that "there is no evidence in the record of any male employees who were fired solely for attendance," and highlights McKinney's testimony that another male casual employee "was released for *among other things*, attendance." (Ex E at 448 (emphasis added); see Pl's Mem in Opp'n at 17.)  McKinney goes on to testify, however, that he "never had attendance issues with any other casual employees." (Ex E at 448.)  Thus, rather than evincing disparate treatment as Plaintiff suggests, McKinney's testimony establishes that all casual employees with attendance issues were terminated, regardless of gender. Further, Plaintiff was terminated by McKinney and "the assistant HR manager." (Ex E at 444.)  Because this Court has already rejected Plaintiff's argument that the hostile actions alleged may be imputed to McKinney or other management personnel, there is no basis from which a rational juror could conclude that the decision was improperly motivated, in whole or in part, by a discriminatory animus. Tomassi, 478 F.3d at 115.

**D.      Retaliatory Termination**

The merits of Plaintiff's retaliation claims in the instant case are also considered under the burden-shifting analysis of McDonnell Douglas Corp. v. Green. 411 U.S. 792, 802-05, 93 S. Ct. 1817, 36 L. Ed. 668 (1973); see Kaytor, 609 F.3d at 552. Plaintiff must first establish a prima facie case by showing that (1) she participated in an Title VII-protected activity; (2) her participation was known to Defendant; (3) Defendant thereafter subjected Plaintiff to a materially adverse action; and (4) there was a causal connection between the protected activity and the adverse action. Kaytor, 609 F.3d at 552. Unlike a disparate treatment claim, Title VII's retaliation provision does not require that the allegedly adverse act bear on the terms or conditions of employment; instead the proper inquiry is "whether the employer's actions were harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." Hicks v. Baines, 593 F.3d 159, 165, 169 (2d Cir. 2010) (internal quotation marks and brackets omitted); see Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006).

A plaintiff's initial burden is generally minimal. Zwan Kwan v. Andalex Group LLC, 737 F.3d 834, 844 (2d Cir. 2013). A plaintiff need not prove that her underlying complaint of discrimination had merit, but only that it was motivated by a good faith, reasonable belief that the underlying employment practice was unlawful." Zann Kwan, 737 F.3d at 843(internal citations and quotation marks omitted); Farren v. Shaw Environmental, 852 F. Supp. 2d 352, 361 (W.D.N.Y. 2012), *aff'd* 510 F. App'x 44 (2013).

Here, Plaintiff does not specify the protected activity on which she bases her retaliation claim, but asserts generally that "she complained multiple times" throughout her employment. (Pl's Mem in Opp'n at 22.) As discussed above, however, Plaintiff was questioned extensively regarding when and to whom she complained, but her testimony recalls only two limited complaints to McKinney 3-4 months prior to her terminations and two complaints to the human resources manager (not the assistant manager) about being referred to as "the girl". (Ex D at 94-96, 99-102, 104-07, 108-110.) The Court will nonetheless presume for the purpose of the present motion that Plaintiff has met the minimal burden of establishing a prima facie case. See Zann Kwan, 737 F.3d at 844 ("general corporate knowledge" of a complaint made in temporal proximity to an adverse action is sufficient for a *prima facie* case of retaliation).

As discussed above, Defendant has submitted evidence of Plaintiff's absenteeism as a legitimate, non-retaliatory reason for Plaintiff's termination. The burden therefore shifts back to Plaintiff to raise a material issue of fact whether it was more likely than not that her protected activity was a but-for cause of the alleged adverse action by Defendant. Univ. of Texas Southwestern Med. Ctr. v. Nassar, – U.S. –, 133 S. Ct. 2517, 2534, 186 L. Ed. 2d 503 (2013); El Sayed v. Hilton Hotels Corp., 627 F.3d 931, 933 (2d Cir. 2010). At this step, general corporate knowledge is insufficient to support a causal connection between Plaintiff's complaints and her termination. Zwan Kwan, 737 F.3d at 844 n. 4 (distinguishing between knowledge and causation elements); see also El Sayed, 627 F.3d at 933 (temporal proximity is similarly insufficient to establish pretext at this stage).

Here, Plaintiff has failed to raise a triable issue of fact whether the limited

complaints she made played any part in the termination decision. Plaintiff's testimony regarding her "complaint" to McKinney indicates that McKinney admonished male coworkers for being undressed in the break room, not because of any complaint she made, but instead based on his own observation. (Ex D at 109-112.)  There is no evidence that the unidentified[3] assistant human resources manager, as opposed to the human resources manager, was aware that Plaintiff made any complaints. See Zwan Kwan, 737 F.3d at 844 n. 4; El Sayed, 627 F.3d at 933.  Accordingly, the protected activity at issue is only Plaintiff's brief complaint to McKinney three to four months before her termination that she "didn't appreciate" being called a "work wife." (Clemens Decl Ex D at 128-129); see generally Soloviev v. Goldstein, -- F. Supp. 3d --, 2015 WL 2249996, *13 (E.D.N.Y. 2015) (although discrimination complaints can be informal, "they cannot be so vague or generalized that the employer could not reasonably have understood that the plaintiff[s'] complaint was directed at conduct prohibited by Title VII). This Court therefore finds that there is insufficient evidence from which a rational juror could conclude that Plaintiff's participation in protected activity was a but-for cause of her termination.

## IV. CONCLUSION

Defendant has established its entitlement to summary judgment; therefore the motion is granted and the Complaint is dismissed.

---

[3] The Court notes that Plaintiff obtained counsel and was no longer proceeding *pro se* prior to the completion of discovery in this case.

## V. ORDERS

IT HEREBY IS ORDERED that Defendant's Motion for Summary Judgment (Docket No. 22) is GRANTED and the Complaint is dismissed;

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: July 9, 2015
Buffalo, New York

                                                   /s/William M. Skretny
                                                   WILLIAM M. SKRETNY
                                             United States District Judge